# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**Jeffrey K. Bartels  Del. ID # 2249**
**Kenneth William Richmond** *pro hac vice*    **Attorneys for Plaintiffs**
**401 South Maryland Avenue**
**Wilmington, DE 19804**
**302-995-6211**

Daniel Maldonado
1181 Paddock Road
Smyrna, DE 19967
                        Plaintiff
              v
First Correctional Medical, Inc.
6861 North Oracle
P. O. Box 69370
Tucson, Arizona 85737-0015                    Civil Action No.
                        Defendant
              and

Correctional Medical Services
12647 Olive Boulevard
St. Louis, MO 63141-9052
                        Defendant
              and
Dr. Jose A. Aramburo, Jr., MD               JURY TRIAL DEMANDED
13427 Worthington Roadl
Philadelphia, PA  19116
                        Defendant
              and
Dr. Sitta Gombeh-Ali, MD
802 Ridge Court
Middletown, DE  19709
                        Defendant
              and
Commissioner Stanley Taylor
Delaware Department of Corrections
Administration Building
245 McKee Road
Dover, Delaware 19904
                        Defendant
              and

Joyce Talley, Bureau Chief of

Management Services
Delaware Department of Corrections
Administration Building
245 McKee Road
Dover, Delaware 19904
                    Defendant

COMPLAINT
FEDERAL CLAIM

## I. JURISDICTION

1.  28  U.S.C.S. 1331 Federal Question:  This is a civil action brought

pursuant to  42 U.S.C.S. 1983 alleging that each of the defendants named above,

while acting under color of state law, in the manner described below, violated the

decedent's right under U.S. Const. amend. VIII, to be free of the infliction of cruel

and unusual punishment and deliberate indifference to a substantial risk of harm

from denial of needed medical treatment.

## II THE PARTIES

2.  The Plaintiff, Daniel Maldonado is currently residing at the above

captioned address at the Delaware Correction Center having SBI number 276883,

and has been in custody with the Delaware Department of Correction since

November of 2004.

3.  Defendant, First Correctional Medical, Inc of 6861 N. Oracle, Tucson,

Arizona, 85737 is a Corporation whose approval was required but withheld for

needed prescriptions, hospital specialist medical care that the Plaintiff suffered during an emergency medical episode that occurred in February, 2005 while he was incarcerated at the facility known as Gander Hill.

4.  Defendant, Correctional Medical Services has been the private Medical Care Vendor to the Delaware Department of Correction since July of 2005 and withheld needed prescriptions, hospital specialist medical care that the Plaintiff suffered during an emergency medical episode that occurred in May of 2006 while he was incarcerated at the Delaware Correctional Center.

5.  Defendant Jose Aramburo, Jr. MD was a physician licensed in Delaware who contracted to or was under the employ of First Correctional Medical of Delaware, LLC and who knowingly withheld medical care to the Plaintiff while under the employ of both Correctional Medical Services and First Correctional Medical of Delaware, LLC, the alter-ego of the Arizona Defendant.

6.  Defendant Sitta Gombeh-Ali, MD was a physician licensed in Delaware who provided medical care and who oversaw the infirmary at Delaware Correctional Center where needed medical care was withheld from the Plaintiff.

7.  Defendant Stanley Taylor is the Commissioner of Corrections for the State of Delaware who, on or about June 17, 2002, entered into an Agreement with First Correctional Medical-Delaware, LLC, the alter-ego for Defendant First Correctional Medical for the provision of comprehensive medical care for inmates incarcerated by the Delaware Department of Corrections.

8.  Defendant Joyce Talley is the Bureau Chief for the Bureau of Management Services, Delaware Department of Corrections, who was specifically charged with oversight of inmate health care services and the medical vendor contract compliance, including responsibility for detailed reviews of inmate medical grievances, during the events described below.

### III  THE FACTS

9.  First Correctional Medical, Inc., is an Arizona Corporation which is a vendor of medical services that had responded to a Delaware Department of Correction Request for Proposal that had been published and circulated among Medical Care Vendors some time between January 1, 2002 and May 1, 2002.  The Defendant First Correctional Medical presented its proposal and its accreditation from the National Commission on Correctional Health Care when submitting its bid to the Delaware Department of Corrections to provide Medicare Care to Inmates.

10. On or about July 1, 2002, an alter ego or subsidiary corporation known as First Correctional Medical of Delaware, LLC commenced business as the actual vendor for the medical care being provided to the Delaware Department of Corrections, while the Defendant First Correctional Medical in Arizona retained control over hospital and specialty care referrals for the Plaintiff in February, 2005.

11.  It is believed and therefore averred that at no time prior to July, 2005 did the Delaware, LLC receive independent accreditation from the National

Commission on Correctional Healthcare, and at all times relevant the Defendants Taylor and Talley, who were ultimately responsible for the contract performance of the medical vendor, relied upon the NCCHC accreditation of the parent company, First Correctional Medical, Inc., in Arizona.

12.  In spite of requests for his medical records set forth in grievances, the Plaintiff has been denied access to them, and therefore the dates set forth are approximate.  Sometime in November, 2004, following sentencing, the Plaintiff advised the intake nurse at Gander Hill that he was a mutative hemophiliac from birth, that he bleeds once per month, and requires 3000 to 4000 units of "Factor 8" during episodes of bleeding.

13.  In addition to the Plaintiff's indication, his mother Betty Pollack was employed at Gander Hill as a nursing assistant in November, 2004 and installed conspicuous medical flags upon the Plaintiff's medical chart that indicated he was hemophiliac.

14.  On Friday February 18, 2005, the Plaintiff experienced the onset of internal groin pain and was seen in the infirmary at Gander Hill by a nurse who attempted to prescribe contraindicated aspirin.  The Plaintiff advised the nurse that he was a hemophiliac and was likely bleeding internally and needed Factor 8, but she indicated that there was nothing in the chart and she could do nothing, not even admit him to the prison infirmary because a Doctor would not be available until Monday-whereupon the Plaintiff was returned to his cell in the general population.

15.    On Monday, February 21, 2005, the Plaintiff was in severe internal pain with a stomach visibly distended, and he had to be carried by a correctional officer and an inmate to a wheel chair and then to the infirmary at Gander Hill where he saw a nurse with a breast tag showing a first name of "Colleen".

16.    This nurse described the Plaintiff's appearance and complaints over the phone to a physician believed to be Defendant Jose Aramburo, Jr., who advised the nurse to install a penile catheter, whereupon the Plaintiff was placed in a room, underwent the painful procedure and was left there unattended for a full day.

17.    On the following day, believed to be Tuesday, February 22, 2005, another nurse came to the Plaintiff and discovered that he had vomited a significant quantity of blood, whereupon the Plaintiff was removed to Saint Francis Hospital, where he was admitted to intensive care for life threatening liver and kidney bleeding.

18.    On or about the end of March 2005, the Plaintiff was discharged directly from intensive monitored care at Saint Francis to the Gander Hill infirmary where his chemistry and functions went unmonitored and the medication that had been prescribed at Saint Francis was withheld.  As a result, his internal bleeding recurred, once again threatening his life and causing his return to the IC unit at Saint Francis for approximately thirty days.

19.    As a result of the pressure from internal bleeding, the Plaintiff

suffered severe permanent neuropathy through his right lower extremity.

20.    After approximately 30 days, the Plaintiff was returned to Gander

Hill and its infirmary where he remained receiving only intermittent Factor 8

medication and nothing for the intolerable pain through his right lower nerve

distribution despite prescriptions for Neurontin and electrical stimulation.

21.    At all times relevant to his treatment through July 1, 2005, the

Plaintiff's medical care was being conducted under the direct supervision of

Defendant Dr. Sitta Gombeh-Ali who, as Medical Director of First Correctional

Medical of Delaware, LLC required the approval of First Correctional Medical of

Arizona in order to secure certain medications, treatment and specialist referral for

the Plaintiff who was under her charge.  It is believed and therefore averred that

Defendant Gombeh-Ali knowingly and intentionally declined to obtain the needed

approvals for the serious medical needs of the Plaintiff for reasons of unjustified

and constitutionally impermissible cost containment practices.


22.    It is believed and therefore averred that Dr. Philip Blatt, the

Plaintiff's hematologist from childhood, intervened at some point due to his

mother's supplication and the Plaintiff received a CAT scan, after which he was

transferred to the Medical Tier of the Delaware Correction Center in May of 2005.

It is believed and therefore averred that Dr. Blatt consulted with a Dr. Muhammed

Niaz and both physicians again prescribed therapy, electrical stimulation and

Factor 8 together with Neurontin in an effort to address the Plaintiff's neuropathy and hemophilia.

23.    It is believed and therefore averred that Correctional Medical Services, Inc., became the medical contractor for the Delaware Department of Correction in July 2005 and thereafter assumed responsibility for the care of the Plaintiff.

24.    In spite of the above referenced prescriptions, the Plaintiff was denied the modalities and his neuropathy progressed until he presently experiences only numbness and pain in his right lower extremity together with a disability, immobility and loss of strength that requires his dependence on a cane.

25.    On or about October, 2005, the Plaintiff filed a medical grievance requesting to see a physician for the pain, for special shoes, a cane and the therapy that had been denied since his arrival at Delaware Correctional Center.

26.    On or about February 2006, the Plaintiff bled internally at his knee and while he was given Factor 8, he had no physician follow up in spite of requests to see a physician.

27.    On or about May 2006, the Plaintiff suffered another bleed in his kidney and requested Factor 8 immediately upon the onset of his symptoms, but

the nurse on duty could not locate his medical file and stated that she could not administer injections.

28.    As a result of not receiving the timely administration of Factor 8, the Plaintiff again bled internally in a kidney causing extreme pain, fear of death, and he had to be taken to Bayhealth-Kent General Hospital for admission to the Intensive Care Unit for approximately thirty days.

29.    It is believed and therefore averred that the physician under whose care the Plaintiff fell while at Kent General Hospital became so alarmed at the third protracted hospitalization that he addressed correspondence to Correctional Medical Services indicating that the Plaintiff should be released so that he could be followed closely by a hematologist.

30.    Through the present, the Plaintiff has not received either prescribed, therapy, required medication, or requested shoes from Correctional Medical Services.

COUNT I
Plaintiffs v. Defendants Taylor and Talley
42 U. S. C. 1983
U. S. CONSTITUTION amend. VIII

31.  Each of the foregoing paragraphs are incorporated herein as though fully set forth and in addition, Plaintiffs allege that at all times relevant hereto, Defendants Taylor and Talley were under budgetary constraints which they knew or should have known were inadequate to meet the medical needs of the inmate population they were charged with overseeing.

23.  It was known to Defendants Taylor and Talley that the profit of the medical vendor, First Correctional Medical and its alter ego or subsidiary, First Correctional of Delaware, LLC was inescapably dependent on restricting access to outside hospital and specialty care.

24.  In addition to the foregoing, Defendants Taylor and Talley, as the ultimate persons responsible for contract compliance for the medical vendor at the times relevant to this complaint, intentionally neglected to investigate the actual care delivered to inmates in general in spite of knowledge that the vendor had difficulty in securing payment for care from the DHSS Medicaid Administrators in Delaware which caused severe $ 800,000.00 arrearages in the payments to outside medical providers.

25.  In addition to the foregoing, the Defendants Taylor and Talley intentionally, or with deliberate indifference (to a substantial risk of harm to the inmates needing outside medical care) withheld needed cooperation from First Correctional Medical to obtain inmate eligibility for Medicaid, all while knowing that the medical vendor was unwilling or unable to pay for outside medical services.

26.  At no time during the period between July 1, 2002 and July 2005 did Defendants Taylor and Talley implement, order or undertake any investigation to

determine the level or care being provided to inmates in general by monitoring

medical grievances, by review or audit of specific items recommended by the

NCCHC or by requiring any explanation for the inordinate number of inmate

deaths as reported by the Federal Bureau of Prisons, except for ordering an audit

by the National Commission on Correctional Health Care after discovering that

outside vendor bills were going unpaid.

27. At no time during the tenure of First Correctional Medical did

Defendants Taylor or Talley seek or even discuss medical budget increases from

the Budget Director in the Office of the Governor, or from the legislature all while

knowing that the vendor prior to First Correctional Medical could not deliver

needed inmate medical care at budgeted amounts for 2001 and 2002 that were

greater than those bid by First Correctional Medical.

28. As a result of the conscious, deliberate indifference to the serious

medical needs of inmates as described, the Defendants, First Correctional Medical,

Gombeh-Ali and Aramburo, and Correctional Medical Services were enabled in

the denial of urgently needed medical care in the present case which resulted in the

Constitutionally forbidden pain and disability for the Plaintiff.


WHEREFORE, the Plaintiff respectfully demands judgment against the

Defendants Taylor and Talley pain, suffering, for future loss of earnings the

Plaintiff would have realized without the disability and for humiliation he

experienced from the needed but withheld medical treatment together with

punitive damages, costs and attorney fees as permitted.

### COUNT II
Plaintiffs v. First Correctional Medical, Gombeh-ali and Aramburo
and Correctional Medical Services
42 U.S.C. 1983 CONSTITUTION  amend. VIII

29.    Each of the foregoing allegations are incorporated herein as though

fully set forth, and in addition it is alleged that Defendants First Correctional

Medical, Correctional Medical Services, Sitta Gombeh-Ali and Jose Aramburo, Jr.

acted or failed to act despite knowledge of a substantial risk of serious harm could

actually befall the Plaintiff, Daniel Maldonado as a direct result of withholding

needed medical care

30.   Each of the Defendants in this Count were directly responsible for the

medical care and supervision of the DCC infirmary at the times indicated above

and actually knew or clearly should have known that the decedent suffered from a

severe medical malady and required treatment and referral in time to prevent

complications and permanent disability.


WHEREFORE, the Plaintiff respectfully demands judgment against the

Defendants Correctional Medical Services, First Correctional Medical, Gombeh-

Ali and Aramburo, Jr. for loss earnings the decedent would have realized and for

the pain, suffering, humiliation he experienced from the needed but withheld

medical treatment, together with punitive damages, costs and attorney fees as

permitted.

Respectfully submitted

/s/_____
Jeffrey K. Bartels
Kenneth William Richmond, *pro hac vice*
401 South Maryland Ave.
Wilmington, DE 19804
302-995-6211

# C E R T I F I C A T I O N

Kenneth William Richmond, Counsel for the Plaintiff in the foregoing action certifies that he has investigated the facts underlying the allegations contained in the attached Complaint and that each of the allegations set forth are true and correct according to his best information and belief.

Dated January 27, 2007                /s/_____
                                      Kenneth William Richmond
                                      2019 Walnut Street
                                      Philadelphia, PA  19103
                                      215-523-9200



JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Daniel Maldonado*

**DEFENDANTS** *First Correctional Medical*

**(b)** County of Residence of First Listed Plaintiff *Kent Co, DE*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *Pima Co., AZ*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) *Jeffrey K. Bartels*
*401 South Maryland Ave*
*Wilmington DE 19804  302-995-6211*

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | |

PERSONAL INJURY: ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**: ☐ 510 Motions to Vacate Sentence; Habeas Corpus: ☐ 530 General; ☐ 535 Death Penalty; ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☒ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *42 U.S.C. 1983*
Brief description of cause: *U.S. Constitution Amend VIII*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE *1/31/07*

SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ___ 0 7 - - 6 3 -

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____5_____ COPIES OF AO FORM 85.

_1 / 31 /.07_

(Date forms issued)

_____

(Signature of Party or their Representative)

KENNETH William Richard

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action